UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


NORTH AMERICAN COMPANY
FOR LIFE AND HEALTH INSURANCE                    PLAINTIFF


VS.                              CIVIL ACTION NO. 3:06CV550TSL-JCS


CHARLES H. LEWIS, III, ET AL.                    DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on a motion for summary
judgment filed by defendant Charles H. Lewis III and a cross-
motion for summary judgment filed by defendants Peter Christian
Davis, Brent W. Davis, Sean Fairchild Davis, Christopher Eric
Davis, and Cynthia Davis, as mother and next friend of Austin
Davis, a minor.  Having considered the memoranda of authorities,
together with attachments, submitted by the parties, together with
additional pertinent authorities, the court concludes that the
motion for summary judgment filed by Mr. Lewis should be granted
and the opposing motion for summary judgment denied.

This is an interpleader action brought by plaintiff North
American Company for Life and Health Insurance (North American) to
determine the rightful beneficiary to the $750,000 proceeds from a
life insurance policy issued by North American insuring Howard W.
Davis.  The policy at issue was procured by Howard Davis on
September 10, 2004 in connection with a contract between him and
Charles H. Lewis III for Mr. Lewis's purchase of Mr. Davis's
interest in certain property.  Following Mr. Davis's death in

March 2006, Mr. Lewis, the sole named beneficiary, filed a notice
of death and claim for the policy benefits.  In response, Mr.
Davis's estate, while agreeing that Mr. Lewis was entitled to
$300,000 of the benefits, representing the amount he had paid to
Mr. Davis under the contract, protested to North American that Mr.
Lewis could not lawfully recover more than $300,000 because he had
no insurable interest above that amount.  The estate claimed that
it was therefore due the $450,000 balance owed under the policy.
Faced with competing claims to the proceeds of the policy, North
American filed the present interpleader action on October 3, 2006
naming as defendants Mr. Lewis and Mr. Davis's heirs.[1]  North
American has since deposited into the court's registry the
$750,000 face value of the policy, with interest, and has been
dismissed from the case.  By agreement of the parties, Mr. Lewis
has been paid the $300,000 in benefits to which the heirs agree he
is entitled.  The balance of the policy benefits which remain in
the court's registry is the subject of defendants' cross-motions
for summary judgment.  Having considered the memoranda of
authorities, together with attachments, submitted by the parties
in support of their respective positions, the court concludes that
the balance of the funds is owed to Mr. Lewis, not the Davis
heirs, for reasons that follow.

---

[1]      North American initially named the Estate of Howard
Davis as a defendant.  Mr. Davis's heirs, his five sons, were
later substituted as defendants.

2

The relevant facts underlying the parties' dispute are undisputed.  On October 26, 2004, defendant Charles Lewis entered into a contract with Howard Davis to purchase approximately 900 acres of real property located in Amite County, Mississippi.  At the time the contract was executed, Mr. Davis did not own the property; rather, the property was in a trust, known as the Charles H. Anderson Trust, and Mr. Davis was to be the sole beneficiary of the trust if he were living on the date of the termination of the trust, December 21, 2009.  The purchase price under the contract between Mr. Davis and Mr. Lewis was $1,440,000; $750,000 of that amount was to be paid in annual installments of $150,000 for five years, and the balance of $690,000 was to be paid on December 22, 2009, the date on which Mr. Davis was to acquire fee simple title to the land and convey title to Mr. Lewis.[2]

Because title to the property was not vested in Mr. Davis at the time the contract was entered, and because title would not vest in Mr. Davis unless he was living on December 21, 2009, there was a risk that Mr. Lewis would not ultimately acquire title to

---

[2]     Mr. Lewis has explained in his affidavit submitted in connection with the parties' motions that he has a degree in forestry and extensive work experience buying and selling timber, and that Mr. Davis, apparently aware of this, approached him at some point in 2004 about purchasing the land.  He reports that he was not interested in the transaction initially, but after a real estate broker named John Romine persistently approached him and Mr. Davis to work out a purchase by Mr. Lewis of Mr. Davis's future interest in the property, they began extensive negotiations which culminated in the execution of the October 26, 2004 sales contract.

the property, and thus, in order to protect Mr. Lewis's interest, the parties agreed that Mr. Lewis would obtain a $750,000 life insurance policy on the life of Mr. Davis.  The contract provided that Mr. Lewis would be the owner and beneficiary of such policy, and that the policy would be valid up and until delivery of fee simple title by Mr. Davis to Mr. Lewis.

At the time of Mr. Davis's death, Mr. Lewis had paid only the first two annual installments under the contract, totaling $300,000.  The Davis heirs insist that Mr. Lewis had no insurable interest in their father's life beyond the amount he had paid under the contract prior to their father's death and that therefore, the law precludes him from recovering any policy proceeds above that $300,000.  They argue that to allow further recovery under the policy by Mr. Lewis "would constitute a windfall, allow Mr. Lewis in effect to 'wager' on the death of Howard Davis and violate the clear and longtime public policy of the State of Mississippi which prohibits life insurance for the benefit of a person who does not have an insurable interest in the life of the deceased."

"Mississippi follows the general rule that in order to be entitled to proceeds from an insurance policy, the purchaser of the policy must have an insurable interest in the property or life insured."  Aetna Cas. & Sur. Co. v. Davidson, 715 F. Supp. 775, 776 (S.D. Miss. 1989) (citations omitted).  This rule "is based on the public policy that one should not be permitted to wager on or

have a direct interest in the loss of life or property of another." Id. (citing National Life & Acc. Ins. Co. v. Ball, 157 Miss. 163, 127 So. 268 (Miss. 1930)).  As the court explained in Ball:

> In order that there may be an insurable interest in the life of another, "there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured.  Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured.  Such policies have a tendency to create a desire for the event.  They are, therefore, independently of any statute on the subject, condemned, as being against public policy."

Ball, 127 So. 268 (quoting Warnock v. Davis, 104 U. S. 775, 779, 26 L. Ed. 924 (1881)).  This principle is codified by statute in Mississippi:

> [N]o person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the insured or his personal representative or to a person having . . . an insurable interest in the insured.

Miss. Code Ann. § 83-5-251(1).[3]  The statute defines the
circumstances in which an insurable interest may be found, as
follows:  (1) a close relation by blood or by law; (2) a lawful
and substantial economic interest, such as a contract, business
partnership, or interest in payment of funeral expenses; or (3) a
religious, educational, charitable, or benevolent agency or
institution named as a beneficiary.  First Colony Life Ins. Co. v.
Sanford, 480 F. Supp. 2d 870, 874 (S.D. Miss. 2007) (citing Miss.
Code Ann. § 83-5-251(3)(a)-(e)).[4]  Here, Mr. Lewis claims an

---

[3]     While a person may not procure a policy of life
insurance on the life of another in whom he has no insurable
interest, the law recognizes that
          [a] person may in good faith and without fraud,
          collusion, or an intent to enter into a wagering
          contract, lawfully take out a policy of insurance on his
          own life and make the benefit payable to whomsoever he
          pleases, either himself or his estate or a third person
          regardless of whether or not the latter has an insurable
          interest; insured has an unlimited insurable interest in
          his own life which is sufficient to support the policy.
          . . .
Davis v. Gulf States Ins. Co., 168 Miss. 161, 151 So. 167 (Miss.
1933).  In this case, although Mr. Davis actually applied for and
thus procured the policy himself, he made Mr. Lewis the owner of
the policy, as well as the sole beneficiary, in keeping with his
agreement with Mr. Lewis.


[4]     The statute provides that an insurable interest may
exist in these circumstances:
          (a)  The individual and the insured are related closely
          by blood or by law, a substantial interest engendered by
          love and affection;
          (b)  The person has a lawful and substantial economic
          interest in having the life, health or bodily safety of
          the insured continue, as distinguished from an interest
          which would arise only by, or would be enhanced in value
          by, the death, disablement or injury of the insured;
          (c)  A party to a contract or option for the purchase or
          sale of an interest in a business proprietorship,
          partnership or firm, or of shares of stock of a closed

insurable interest arose by virtue of his having an economic
interest in having Mr. Davis's life continue.  The pertinent
subsection of § 83-5-251 provides that an insurable interest may
exist where one has

> a lawful and substantial economic interest in having the
> life, health or bodily safety of the insured (Mr. Davis)
> continue, as distinguished from an interest which would
> arise only by, or would be enhanced in value by, the
> death, disablement or injury of the insured.

Miss. Code Ann. § 83-5-251(c).

Initially, there is disagreement between the claimants as to
whether the parties to the real estate contract intended for Mr.
Lewis to recover any more under the life insurance policy than he
had paid under the contract.  Whereas Mr. Lewis insists this was
the parties' intent, the Davis heirs dispute this, and maintain
that the contract itself unambiguously limits Mr. Lewis to
reimbursement of amounts he paid and reflects the contracting
parties' intent that his interest be so limited.  In particular,

-----

> corporation or of an interest in such shares, has an
> insurable interest in the life, body and health of each
> individual party to such contract and for the purposes
> of such contract only, in addition to any insurable
> interest which may exist as to such individual;
> (d) A person has a lawful interest in having the funeral
> expenses of the insured paid through insurance, provided
> the insured has knowledge of such insurance; and
> (e) Any religious, educational, eleemosynary, charitable
> or benevolent institution or its agency may be named
> beneficiary in any policy of life insurance issued by
> any insurance company upon the life of any individual.
> . . . .
Miss. Code Ann. § 83-5-251.

the Davis heirs point to the following language in the contract:

> In the event of the death of Howard W. Davis, the
> insurance policy will then provide the proper coverage
> to C. H. Lewis, III, to reimburse him for any and
> all funds he has expended . . . . (Emphasis added).

As the Davis heirs note, when a question arises as to the
contracting parties' purpose or intent, the court first looks to
the contract itself to determine whether their intent may fairly
be ascertained from an objective reading of the words employed in
the contract.  See Facilities, Inc. v. Rogers-Usry Chevrolet,
Inc., 908 So. 2d 107, 110 (Miss. 2005) ("Our concern is not nearly
so much with what the parties may have intended, but with what
they said, since the words employed are by far the best resource
for ascertaining the intent and assigning meaning with fairness
and accuracy.");[5] Dunlap Acres, Ltd. v. Intervest Dev. Corp., 955
So. 2d 345, 348 (Miss. Ct. App. 2006) ("A court must effect a
determination of the meaning of the language used, not the
ascertainment of some possible but unexpressed intent of the
parties.") (citing Cherry v. Anthony, 501 So. 2d 416, 419 (Miss.
1987)).  In so doing, the court must be careful not to consider
provisions in isolation, but rather must look to the contract as a
whole.  See Facilities, Inc., 908 So. 2d at 111 ("When construing

---

[5]     The court notes that "[q]uestions concerning the
construction of contracts are questions of law that are committed
to the court rather than questions of fact committed to the fact
finder."  Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So.
2d 107, 110 (Miss. 2005) (quoting Parkerson v. Smith, 817 So. 2d
529, 532 (Miss. 2002)).

a contract, we will read the contract as a whole, so as to give effect to all of its clauses."). If the contract is not clear, "the court will, if possible, harmonize the provisions in accord with the parties' apparent intent," Pursue Energy Corp. v. Perkins, 558 So. 2d 349, 352 (Miss. 1990), and only if the contract is unclear or ambiguous may a court go beyond the text to determine the parties' true intent," id.

In this case, notwithstanding the language quoted by the Davis heirs, the court cannot divine in this contract a clear intent that Mr. Lewis would be limited to recovering under the insurance policy only the amount of the payments he had made under the contract. Although the quoted passage does refer to coverage "to reimburse [Mr. Lewis] for any and all funds he has expended," this provision, considered in the context of the contract as a whole, does not reflect an intent to so limit Mr. Lewis's recovery. On the contrary, the very provision in which this sentence appears further recites that "in the event of the death of Howard W. Davis, any and all insurance proceeds will be made directly payable to C.H. Lewis, III, as provided within this agreement and subject policy." (Emphasis added). The policy itself, the terms of which are incorporated in the parties' sales/purchase agreement, indisputably provides that Mr. Lewis is the sole beneficiary of the full $750,000. Moreover, the parties' intent that Mr. Lewis would receive the entire $750,000 is implicit in the provision of the contract respecting payment of

9

the policy premium.  The contract explicitly provides that in each succeeding year, Mr. Davis was to pay a percentage of the premium equivalent to the percentage of installments that Mr. Lewis had paid and Mr. Lewis would pay the balance of the year's annual premium out of pocket.  This arrangement belies any interpretation of the contract as providing that the insurance policy would only reimburse Mr. Lewis for his payments under the sales contract. See Windsor Village of Clinton, LLC v. Solon Automated Services, Inc., 392 F. Supp. 2d 769, 771 (S.D. Miss. 2005) ("[T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law.").

Even if the contract were not entirely clear on this point, extrinsic evidence presented by Mr. Lewis establishes beyond dispute that Mr. Lewis and Mr. Davis intended that in the event of Mr. Davis's death prior to completion of the real estate transaction, Mr. Lewis would receive the entire policy proceeds irrespective of the amount he had paid under the contract.  Mr. Lewis declares in his own affidavit that this was his intent, and this is corroborated by correspondence from Mr. Lewis to Mr. Davis during the parties' negotiations which sets forth his position.[6]

---

[6]    In his handwritten letter to Mr. Davis, Lewis wrote, among other things,
> [T]he premium would be paid for the entire $750,000.00 –
> only 20% of which would be necessary to reimburse me for
> the $ advanced to you last year.
> [I]f you croaked, I would directly benefit from 80%
> excess ($600,000.00) – therefore I would be willing to
> kick in 80% of the premium from my own pocket.
> [O]bviously, after 2nd payment, $300,000.00 of policy

Moreover, attorney Wayne Smith, who assisted the parties in their contract negotiations and who drafted the contract, confirms in his affidavit that the issue of life insurance proceeds was discussed in detail during the contract negotiations, and that in those discussions:

> Mr. Davis clearly indicated that he had no problem with C.H. Lewis, III, receiving all proceeds of the life insurance policy if he died before December 21, 2009, and that is why the parties agreed to this term in the contract.  This was done because all parties fully understood that C.H. Lewis, III, would receive all the life insurance proceeds in the event of the event of the death of Howard W. Davis. . . .   Howard Davis understood the terms of the life insurance policy and that C.H. Lewis, III, would receive all benefits thereunder.

Similarly, John Romine, the real estate broker for the transaction who participated in the parties' extensive negotiations, has provided an affidavit in which he attests that "[t]he understanding and intent of [the parties'] agreement as it pertains to the beneficiary and ownership of the $750,000 insurance policy issued on the life of Howard Davis was that Buddy Lewis would receive the entire death benefit proceeds of that policy in the event that Howard Davis died at any time prior to December 31, 2009."  In light of all the evidence, including the sales contract itself and the testimony of Mr. Lewis, Mr. Smith and Mr. Romine, the court rejects as unfounded the Davis heirs' contention that Mr. Davis and Mr. Lewis intended that Mr. Lewis's

---

would be for my reimbursement (40% from total) and 60% would be direct benefit to me.  2nd year I would pay 60% of premium from my own pocket.

recovery under the policy in the event of Mr. Davis's death would be limited to reimbursement of monies he had paid under the sales contract.

That having been said, the law is clear that the fact that Mr. Davis agreed that Mr. Lewis would receive the full policy benefit in the event Mr. Davis did not live to complete the transaction, while relevant on the parties' intent, would be "immaterial" if, as the Davis heirs claim, Mr. Lewis had no insurable interest beyond the $300,000 he had paid.  The Mississippi Supreme Court has held, "[I]t is immaterial that the insured consented, for 'where one has no insurable interest in the life of another, the law will not permit him to take out insurance on such life, and, if he does so, will not lend its aid to the enforcement of such contract because against public policy, and the fact that the insured lends his consent to the transaction adds nothing whatever to its validity.'"  <u>Ball</u>, 127 So. 268 (quoting <u>Western & So. Life Ins. Co. v. Grimes</u>, 138 Ky. 338, 128 S. W. 65, 67 (1910)).  <u>See also</u> <u>Rubenstein v. Mutual Life Ins. Co. of New York</u>, 584 F. Supp. 272, 279 (E.D. La. 1984) ("Because an insurable interest is required by law in order to protect the safety of the public by preventing anyone from acquiring a greater interest in another person's death than in his continued life, the parties cannot, even by solemn contract, create insurance without an insurable interest").  The dispositive question, therefore, is whether Mr. Lewis had an insurable interest beyond the $300,000 he

had paid under the contract, and if so, the extent of that interest.

To have the requisite insurable interest, at the time the insurance was procured, Mr. Lewis must have had a substantial economic interest in having Mr. Davis's life continue, rather than an interest which would become more valuable as a result of Mr. Davis's death.  <u>See</u> Miss. Code Ann. § 83-5 251(a).[7]  A Texas court "bluntly expressed" the principle in this way:

> [I]nsurable interest . . . is determined by monetary considerations, viewed from the standpoint of the beneficiary.  Would [the beneficiary] regard himself as better off from the standpoint of money, would [the beneficiary] enjoy more substantial economic returns should the insured continue to live; or would [the beneficiary] have more, in the form of the proceeds of the policy, should [the insured] die?  Therefore, it is said that if the situation is such that [the beneficiary] might be led to conclude that he would profit by [the insured's] death, the policy is void as to him since the public has a controlling concern that no person have an interest in the early death of another, an interest that may give rise to a temptation to destroy [the insured's] life.

<u>Mayo v. Hartford Life Ins. Co.</u>, 220 F. Supp. 2d 794, 798 (S.D. Tex. 2002) (citations omitted).  "[W]hether an individual has an insurable interest in another also may be determined by examining the "'loss or disadvantage [which] will naturally and probably arise, to the party in whose favor the policy is written, from the death of the person whose life is insured.'"  <u>Beard v. American Agency Life Ins. Co.</u>, 314 Md. 235, 247, 550 A.2d 677, 683 (Md.

---

[7]     Mr. Lewis did not have an insurable interest in Mr. Davis of the types described in Mississippi Code Annotated § 83-5-251(a), ( c), (d) or (e), <u>see</u> <u>supra</u> note 4.

1988) (citations omitted).  This is "but the negative counterpart of the same proposition of which 'the reasonable expectation of a substantial pecuniary benefit' is the affirmative component." Stillwagoner v. Travelers Ins. Co., 979 S.W. 2d 354, 363 (Tex. App. 1998)).[8]

Here, contrary to the Davis heirs' assertion, Mr. Lewis's economic interest in the transaction extended beyond the payments he made under the contract with Mr. Davis.[9]  The record

_____

[8]    The question whether one person has a lawful and substantial economic interest in the life of another that is deemed sufficient to support a finding that such person has an insurable interest in the other's life arises most often in cases involving employer/employee relationships, corporation/officer/ shareholder relationships, and debtor/creditor relationships; very few cases have considered other types of economic interest.  The general rules in the former categories described are that "[a] corporation has an insurable interest in the lives of its officers, and principal stockholders whose services and qualifications are of such a nature that the corporation would suffer substantial pecuniary loss by their death," Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 43:15 (3d ed. 2006); and an employer has an insurable interest in the life of its key employees," New York Life Ins. Co. v. Baum, 700 F.2d 928, 935 (5th Cir. 1983)(citing 2 J. Appleman, Insurance Law and Practice § 872 (1941)), although no such insurable interest generally exists as to lower level or "rank and file" employees who are not crucial to the employer's operations, see Tillman ex rel. Estate of Tillman v. Camelot Music, Inc., 408 F.3d 1300, 1304 (10th Cir. 2005). These rules of no applicability here.  For the rule applicable in debtor/creditor relationships, see infra note 9.

[9]    The Davis heirs liken the relationship between their father and Mr. Lewis to that of a creditor and debtor, and they point out that whereas all courts recognize that a creditor unquestionably has an insurable interest in the life of his debtor, most courts hold that the creditor's insurable interest is limited by the amount of the debt so that the creditor's recovery is likewise limited to the amount of the outstanding debt.  See, e.g., Albrent v. Spencer, 81 N.W. 2d 555, 561 (Wis. 1957) ("It offends one's sense of justice that a creditor should realize more out of the proceeds of the policy than the principal and interest due on the loan for which the policy was pledged plus any

establishes without contradiction that Mr. Lewis intended to purchase the trust property that was the subject of his contract with Mr. Davis as an investment; he believed the property would appreciate in value and give him the opportunity for significant profit of substantially more than the face value of the policy at issue.

In his sworn response to interrogatories propounded by defendants, Mr. Lewis declares:

> I had an interest in [Mr. Davis's] life and hoped to see him live. . .  I certainly wanted him to live because I intended to make a substantial financial gain on this risk/investment after I obtained ownership of the property pursuant to our contract.
> . . .

Mr. Lewis elaborates in his affidavit accompanying his motion, stating, "I expected to double my money and make a profit of approximately $1.5 million after cutting the timber and selling the property."  He continues, stating,

> Since I was paying a substantial sum of money with interest accruing over five years, together with other risks involved in such a purchase, I looked at the insurance proceeds just as any other person would look at an insurance policy. . . for insurance.  Although I certainly would have been better off financially had Mr. Davis lived, I wanted liquidated damages if he did not wind up inheriting the property.

---

expenditure of the creditor for premiums necessary to protect his security."); Morrow v. National Life Assn. of Des Moines, Iowa, 168 S.W. 881, 883 (Mo. 1914) (fact that creditor insured life of debtor beyond amount of debt "[did] not make the policy void as a wager contract, but the creditor [was] bound to account to the debtor's estate as trustee for the excess").  In the court's opinion, these case are inapposite because Mr. Lewis was not a debtor of Mr. Davis nor in an analogous position.

Mr. Romine also attests that throughout the negotiations, he was aware, as presumably was Mr. Davis, that Mr. Lewis "was purchasing [the] property to make a profit in anticipation of appreciation of the value and timber growth."  Thus, according to Mr. Lewis's unchallenged testimony, he expected to receive a much greater economic benefit had Mr. Davis lived to complete the transaction than the face value of the subject insurance policy; conversely, he had more to lose than to gain by Mr. Davis's death.

In the final analysis, the "existence of an insurable interest depends upon the inherent nature of the financial, beneficial or personal relationship existing between the parties involved and . . . the all important and essential thing to be taken into consideration in its determination is whether the policy was obtained in good faith, and not for the purpose of speculating on the duration of a life in which the beneficiary had no interest." Geisler v. Mutual Ben. Health & Acc. Ass'n, 163 Kan. 518, 526, 183 P.2d 853, 859 (Kan. 1947).  In the case at bar, there is nothing in the record to cast any doubt on Mr. Lewis's good faith in procuring the subject policy, nor is there anything in the nature and terms of the parties' transaction to suggest that by virtue of the insurance policy, Mr. Lewis may have had (or perceived) a greater interest in Mr. Davis's death than in his continued life.  The court concludes, therefore, that Mr. Lewis had the requisite insurable interest and that consequently, he is entitled to recover the entire policy benefit.

Accordingly, it is ordered that Mr. Lewis's motion for summary judgment is granted, and the motion of the Davis heirs for summary judgment is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of civil Procedure.

SO ORDERED this 24th day of January, 2008.


/S/Tom S. Lee
UNITED STATES DISTRICT JUDGE